IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| William Longarrow Riffey, | C/A No.: 1:09-2872-JMC-SVH |
| Plaintiff, | |
| vs. | |
| | REPORT AND RECOMMENDATION |
| Troy Johnson, individually and in his official capacity; and Bureau of Prisons, | |
| Defendants. | |

Plaintiff William L. Riffey ("Plaintiff"), proceeding pro se, brings this civil action pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971). Plaintiff is an inmate at the Federal Correctional Institution ("FCI") in Estill, South Carolina, a facility of the Bureau of Prisons ("BOP"), and files this action *in forma pauperis* under 28 U.S.C. § 1915.

Before the court are the following motions: (1) Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment [Entry #37]; and (2) Plaintiff's Motion for a Hearing [Entry #60]. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d) and (e) (D.S.C.), the undersigned is authorized to review such complaints for relief. Because the motion to dismiss is a dispositive motion, this Report and Recommendation is entered for review by the district judge.

I. Factual and Procedural Background

Plaintiff filed his complaint in this action on November 9, 2009 [Entry #1]. Defendants' motion to dismiss was filed on March 26, 2010. Pursuant to *Roseboro v.*

*Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' motion [Entry #38]. Plaintiff filed a timely response in opposition to Defendants' motion on April 2, 2010. [Entry #41].

In his complaint, Plaintiff alleges his back and hip ailments require that he wear a metal brace and carry a cane. He contends that on October 5, 2008, he walked around a metal detector, which signaled. [Entry #1-1]. Defendant Johnson performed a pat search on him. Plaintiff, who also has orthopedic stabilzer rods in his lower back and has had fusion on his left hip, alleges that Johnson kicked his left foot spread his legs for a pat down. [Entry #1]. Plaintiff alleges Johnson then squeezed his testicles twice and did not otherwise perform the pat down. *Id.* Plaintiff claims this incident caused him physical and mental pain. *Id.*

II.  Discussion

    A.  Standard of Review

When a federal court is evaluating a pro se complaint, the plaintiff's factual allegations are assumed to be true. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). The United States Supreme Court recently stated that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007)). "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions," or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Likewise, "a complaint [will not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancements.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557).

    B.    Analysis

        1.    Sovereign Immunity

As an initial matter, Defendants argue that this court does not have jurisdiction over Johnson in his official capacity or over the BOP. The undersigned agrees.

Plaintiff is bringing suit against an officer in a federal prison. As such, his constitutional claims are evaluated under *Bivens*. *Bivens* establishes as a general proposition that victims of a constitutional violation perpetuated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits. *Carlson v. Green*, 446 U.S. 14, 18 (1980); *see also Holly v. Scott*, 434 F.3d 287, 289 (4th Cir. 2006). A *Bivens* claim is analogous to a claim brought against state officials under 42 U.S.C. § 1983. Therefore, caselaw involving § 1983 claims is applicable in *Bivens* actions, and vice versa. *See Harlow v. Fitzgerald*, 457 U.S. 800, 814-820, n. 30 (1982); *see also Farmer v. Brennan*, 511 U.S. 825 (1994).

However, the Supreme Court has recognized, "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). *Bivens* did not abolish the doctrine of sovereign immunity of the United States. "Any remedy under *Bivens* is against federal officials individually, not the federal government." *Randall v. U.S.*, 95 F.3d 339, 345 (4th Cir. 1996). Similarly, courts have recognized that federal agencies can not be sued for monetary damages in a *Bivens* action. *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471 (1994) (holding that a *Bivens* action cannot lie against a federal agency); *Doe v. Chao*, 306 F.3d 170, 184 (4th Cir. 2002) (observing that "a *Bivens* action does not lie against either agencies or officials in their official capacity"). Therefore, the undersigned recommends the court grant summary judgment on Plaintiff's claims against Johnson in his official capacity and against the BOP.

    2.    Exhaustion of Administrative Remedies

Defendant Johnson has also moved to dismiss the complaint in his individual capacity, arguing Plaintiff has failed to exhaust his administrative remedies. The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (codified as amended at 42 U.S.C. § 1997e(a) (1996)), mandates, among other things, that federal prisoners exhaust their administrative remedies prior to filing civil actions. *See Jones v. Bock*, 549 U.S. 199, 211 (2007); *Booth v. Churner*, 532 U.S. 731 (2001). Exhaustion is required for "[a]ll action[s]. . . brought with respect to prison conditions, whether under § 1983 or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (internal quotations

omitted). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*, 534 U.S. at 532. Exhaustion is a threshold requirement which must be satisfied in order for prisoner complaints to proceed. *See Jones*, 549 U.S. at 216; *Booth*, 532 U.S. at 741. Although PLRA exhaustion is not jurisdictional, failure to exhaust is an affirmative defense that can be pleaded by the defendants. *Jones*, 549 U.S. at 216. No unexhausted claims may be considered by the court; such claims must be dismissed. *Jones*, 549 U.S. at 211. The PLRA requires "proper" exhaustion, that is, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

The BOP has a three-tiered administrative grievance process. *See* 28 C.F.R. §§ 542.10 et seq. An inmate may complain about any aspect of his confinement by first seeking to informally resolve the complaint at the institution level. 28 C.F.R. § 542.13. If the matter cannot be resolved informally, the inmate may file a formal written complaint to the warden. 28 C.F.R. § 542.14. The matter will be investigated, and a written response provided to the inmate. *Id*. If dissatisfied with the response, the inmate may appeal to the Regional Director. 28 C.F.R. § 542.15(a). If dissatisfied with the regional response, the inmate may appeal to the General Counsel. *Id.* Appeal to the General Counsel is the final level of agency review. 28 C.F.R. §542.15(a).

Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. *Jones*, 549 U.S. at 204. It also has the potential to reduce the number of inmate suits and to improve the quality of suits that are filed by producing a useful administrative record. *Id.*; *Woodford*, 548 U.S. at 94–95. When a grievance is filed shortly after the event giving rise to the grievance, witnesses can be identified and questioned while memories are still fresh, and evidence can be gathered and preserved. *Woodford*, 548 U.S. at 95. This is the reason for the BOP requirement that inmates institute their grievances within 20 days of the date of incident giving rise to the complaint. *See* 28 C.F.R. § 542.14(a). As the Court explained:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction, and under respondent's interpretation of the PLRA noncompliance carries no significant sanction. For example, a prisoner wishing to bypass available administrative remedies could simply file a late grievance without providing any reason for failing to file on time. If the prison then rejects the grievance as untimely, the prisoner could proceed directly to federal court. And acceptance of the late grievance would not thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

*Woodford*, 548 U.S. at 95.

In his complaint, Plaintiff states he has received a final agency answer or determination concerning his allegations that he was assaulted by Defendant Johnson. [Entry #1]. Defendants argue a review of the BOP records reveals Plaintiff did not timely exhaust the remedies available under the formal Administrative Remedy procedure concerning the alleged assault. *See* Aff. of Cassaro [Entry #37-3].

On November 5, 2008, Plaintiff filed a formal administrative remedy with the Warden at FCI-Estill alleging he had been assaulted by Johnson. [Entry #37-3 at 8]. On November 21, 2008, the Warden responded to Plaintiff, informing him that his allegations had been referred to the appropriate authority for investigation. *Id.* at 12. The Warden indicated the response was for informational purposes only, as his findings from staff investigations are not made available to inmates, and he advised Plaintiff that any appeal must be received in the Regional Director's Office within 20 calendar days.

On February 2, 2009, the Regional Director received Plaintiff's appeal of the Warden's decision regarding his allegations of assault by Johnson. *Id.* at 13. On February 12, 2009, the appeal was rejected as untimely. [Entry #37-3 at 14]. The Regional Director received Plaintiff's second appeal of the Warden's decision on March 11, 2009, which was again rejected as untimely. *Id.* at 17–18. Plaintiff next submitted his appeal to the Central Office, but it was again rejected it as untimely. *Id.* at 19, 23.

When Plaintiff was untimely in filing his appeal to the Regional Office, he was allowed the opportunity to provide verification from staff that his untimeliness was not his fault. [Entry #37-3 at 18]. The explanation he provided to the Central Office stated that the

institution was locked down. Although Defendants concede FCI-Estill was locked down from December 4, 2008 until December 11, they argue inmate incoming and outgoing mail was processed normally with no restrictions during this period, including the mail of those inmates housed in the Special Housing Unit. *Id*. at 24. However, even excluding the period of the first lockdown, Plaintiff's appeal to the Regional Office on February 2, 2009 was untimely. Having failed to timely exhaust his administrative remedies on the claims set forth in his complaint, Plaintiff's remaining claims against Defendant Johnson should be dismissed for failure to exhaust administrative remedies.

III. Conclusion

For the reasons discussed above, it is recommended that Defendants' Motion to Dismiss [Entry #37] be granted. If the district judge accepts this motion, Plaintiff's Motion for a Hearing [Entry #60] will be rendered moot.

IT IS SO RECOMMENDED.

December 10, 2010  Shiva V. Hodges
Florence, South Carolina  United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**